IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JULIA E. O'NEAL, a Montana resident, | CV 12–80–H–CCL |
| Plaintiff, | ORDER |
| vs. | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation, | |
| Defendant. | |

This action is brought pursuant to § 502(a) of the Employers Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), which is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *See Shaw v. Delta Airlines*, 463 U.S. 85, 90-91, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Plaintiff's Amended Complaint seeks review of Defendant's denial of an $83,000.00 accidental death insurance benefit. Before the Court are cross-motions for summary judgment.

The parties having stipulated that the case shall be decided by "*de novo* review by the Court on cross-motions for summary judgment based on the administrative record" (*see* Doc. 12, ¶ 2), the Court finds that the matter is suitable for determination without a hearing.

Background.

Plaintiff Julia E. O'Neal ("O'Neal") is the beneficiary of an accident insurance policy made available to her son through the Helmerich & Payne, Inc. ("H&P") employee benefit plan. Defendant Life Insurance Company of North America ("LINA") issued the group accident insurance policy to H&P. Plaintiff O'Neal is the mother of Reece E. Cape ("Cape"), who was employed by H&P at the time of his death in an automobile crash. After her claim was denied by the LINA, O'Neal appealed administratively and has therefore exhausted her administrative remedies. The group policy issued by LINA does not grant LINA discretion to construe plan provisions or interpret plan terms. The parties therefore have agreed that a *de novo* standard of review applies in this action.

Legal Standards.

<u>Summary Judgment.</u>

The moving party must inform the court of the basis for the motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment should be granted if the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56©, Fed. R. Civ. P. Once this initial burden is met, the opposing party must "go beyond the pleadings" and "set forth specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 248, 106 S.Ct. at 2510 (internal quotes omitted). "If a party fails to properly support an assertion of facts or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion. . . ." Rule 56(e)(2). "[A] party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

"On summary judgment, the proper task is not to weigh conflicting

3

evidence, but rather to ask whether the non-moving party has produced sufficient evidence to permit the fact finder to hold in his favor." *Ingram v. Martin Marietta Long Term Disability Income Plan for Salaried Employees of Transferred GE Operations*, 244 F.3d 1109, 1114 (9th Cir. 2011). Because there is no right to jury trial in ERISA cases, a bench trial, confined to the administrative record, before a district judge who has already ruled on summary judgment would be "little more than a formality." *Id.* at 1114. At a bench trial, the district court can admit additional evidence if "circumstances clearly establish that [it] is necessary to conduct an adequate *de novo* review of the benefit decision." *Id.* (quoting *Mongeluzo*, 46 F.3d at 944)). In this case, however, neither party gives any indication of having any additional evidence to offer. Indeed, both parties seek summary judgment on the existing administrative record and assert there are no genuine issues of material fact.

　　　Review of denial of ERISA benefits.

　　　It is undisputed that the *de novo* standard of review applies because H&P's ERISA-government employee benefit plan does not give the administrator

"discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Under *de novo* review, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). The court must weigh the evidence to determine what is most persuasive. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999). The Court applies federal common law to interpret an insurance policy under ERISA. *Id.* at 110, 109 S.Ct. 948; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (federal common law of ERISA preempts state law for purposes of plan interpretation). Under the federal common law, terms of insurance policies are to be interpreted "in an ordinary and popular sense as would a person of average intelligence and experience." *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir. 1995) (internal quotations omitted). Terms that are not defined by the plan (and other ambiguities) are to be construed against the drafter of the plan. *See Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950

5

(9th Cir. 1993). A term is ambiguous if it can reasonably be interpreted to have more than one meaning and the proper interpretation is not demonstrated by the contract itself. *Bjornstad v. Senior American Life Ins. Co.*, 599 F.Supp.2d 1165, 1170 (D. Ariz. 2009) (citing *J.D. Land Co. v. Killan*, 762 P.2d 124, 126 (Ariz. 1988)).

The claimant seeking to clarify a right to benefits under the terms of the plan carries the burden of proof, and she must establish her entitlement by a preponderance of the evidence. *See Muniz v. Amec Const. Management, Inc.*, 632 F.3d 1290, 1294 (9th Cir. 2010) (citing *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998)). Under the *de novo* standard, "the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is [entitled to benefits] under the terms of the plan." *Muniz*, 623 F.3d at 1295-96. Once the plan administrator determines that the claimant is generally entitled to the benefit sought, then the burden is on the administrator to prove by a preponderance of the evidence that an exclusion under the policy applies to the

claim. *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1140 (11th Cir. 1998).

Under the *de novo* standard of review, an administrator's decision to deny benefits cannot be decided by summary judgment if genuine issues of material fact are in dispute, because in such a case a trial is necessary. *Tremain v. Bell Industries, Inc.* 196 F.3d 970, 978 (9th Cir. 1999). In addition, a district court may admit additional evidence outside the administrative record when insufficient evidence exists to allow for a *de novo* review. *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943-44 (9th Cir. 1995) (quoting *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 (4th Cir. 1993) (en banc)); *see also Opeta v. Northwest Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007). A non-exhaustive list of circumstances clearly establishing the need for evidence beyond the administrative record include complex medical questions, little or no evidentiary record, need for evidence regarding plan interpretation, impartiality issues when the administrator is payor, traditional insurance contract claims prior to ERISA, and circumstances

7

in which there is additional evidence that the claimant could not have presented in the administrative process (such as a post-denial award of Social Security disability benefits).  *Opeta*, 484 F.3d at 1217 (quoting *Quesinberry*, 987 F.2d at 1025).  A court's decision to admit extrinsic evidence is within the sound discretion of the court.  *Opeta*, 484 F.2d at 1216.

In this case, neither party contends that there are genuine issues of material fact in dispute or that any additional evidence outside the administrative record should be considered; instead, each party asserts entitlement to summary judgment as a matter of law on the administrative record before the Court.

Facts.

Plaintiff Julia O'Neal is the named beneficiary on insured Reece Cape's Group Accident Plan issued by his employer, Helmerich & Payne, Inc.  Cape was working in the North Dakota oil fields for H&P in 2011.  He was 22 years old.  He worked the night shift from 6:00 p.m. to 6:00 a.m., working in two week shifts on the oil rig.  On June 8, 2011, Cape got off work at 6:00 a.m. and embarked on a 700 mile trip to Missoula, Montana.  In Glendive, Montana, Cape and a co-

worker, David Stephens, caught a ride with another oil field worker, Ryan Kane, who was 34 years old and who lived in Missoula. Kane was driving his own vehicle, a 2009 Nissan Murano sport utility vehicle. Although Kane told his wife during a telephone call shortly after 8:30 a.m. that he was going to drive for a couple of hours and then sleep, "Stephens said Kane drove most of the way and he did not remember Cape ever switching to the driver's seat." AR 000045.

David Stephens slept the entire trip in the back seat. Kane drove the Murano out of Glendive. "The last thing he [Stephens] remembers before the crash was when Kane woke him up and asked him to hand him a pillow from the rear of the car." AR 000044. Kane was sitting in the passenger seat when he asked Stephens for a pillow. "The next thing [Stephens] remembers was the mass confusion of the crash and being transported to the hospital." AR 000044.

At 2:21 p.m., Julia O'Neal received a phone call from her son, Reece Cape.[1]

---

[1] Doc. 15, Pl.'s Finding of Fact ¶ 30 ("Plaintiff received a phone call from Cape at 1421 hours, which was the same approximate time of the crash."). However, O'Neal's brief in support of summary judgment asserts that "Defendant did not ask Plaintiff about Cape's phone call to her moments before the accident.

At or about that time, Cape was driving the Murano west-bound on I-90, and he passed witness Richard Day's vehicle. The sky was cloudy and the road was wet from a previous rain. AR 000044. Richard Day was in the right lane and estimated that he was traveling at the speed limit (75 miles per hour). Day saw the Murano approaching him rapidly in the same lane, so Day turned off his cruise control and began to slow down. It was an uphill section of road. AR 000044. When Cape passed the Day vehicle, Day estimates that Cape's vehicle was traveling "in excess of 90 mph." AR 000043.

Approximately 3 to 4 car lengths ahead of Day (AR 000047) was a Ford F-750 boom lift flatbed truck driven by Jonathan Dengel. AR 000043-44. After passing Day, Cape returned the Murano to the right lane, tucking into the gap between Day and Dengel. Dengel had downshifted one gear on this uphill stretch,

---

It is not clear whether Plaintiff spoke to or received a message from Cape, or whether the time of the phone call was recorded on a digital device or was approximated by Plaintiff. There is nothing in the record regarding whether the phone call played any role in the accident at hand, much less caused the accident." (Doc. 16 at 20.)

and he estimated that his speed was approximately 45-50 mph. Instead of applying his brakes, Cape attempted to veer back into the left lane to pass Dengel's truck, but his right passenger side collided violently with the left rear corner of the boom truck. AR 000043. Both Cape and Kane died immediately upon impact of blunt force trauma. AR 000044. The toxicology report indicates that Cape had nicotine and caffeine in his blood and urine, but no alcohol. AR 000060.

Montana Highway Patrol Officer Dave Oliverson concluded that

Reece Cape was speeding and driving recklessly while trying to manipulate an electronic communication device which resulted in his inability to safely operate the vehicle. His actions resulted in a two vehicle, double fatality crash. Reece Cape and Ryan Kane both sustained fatal injuries from the violent collision and were pronounced dead at the scene. David Stephens was transported to the hospital and treated for his injuries while Jonathan Dengel was evaluated by medical personnel at the scene and found to be uninjured.

AR 000045.

Discussion.

Although LINA found that the automobile crash was an accident within the

meaning of the policy, LINA denied Plaintiff's claim because of a felony

exclusion provision in the Group Accidental Death & Dismemberment policy.

Thus, pursuant to *Horton v. Reliance Standard Life Ins. Co.*, the burden shifts

from O'Neal to LINA to demonstrate that the felony exclusion provision applies to

the claim.

The felony exclusion provision states that "benefits will not be paid for any

Covered Injury or Covered Loss which, directly or indirectly, in whole or in part,

is caused by or results from any of the following . . . 2. commission[2] or attempt to

commit a felony or an assault. . . . AR 000209. LINA determined that Cape "was

in the commission of a felony at the time of his death." AR 000029-30. This

---

[2] Defendant cites *Barker v. California-Western States Life Ins. Co.*, 252 Cal.App.2d 768, 61 Cal.Rptr. 595 (Cal. 1967) for the proposition that it is not necessary that the insured suffer a conviction of the felony. (Doc. 18 at 16.) The Court agrees that no conviction need be proven, and, indeed, in the context of an accidental death benefit policy, that the policy "contemplates the death of the insured," and "the exclusion clause would have little if any meaning if a conviction were also required." *Id.*

determination was based on LINA's view that "s]peeding, talking and texting[3] while driving on a high-speed, wet roadway is conduct that amounts to a gross deviation from standard conduct."  AR 000029.  LINA also mentions other aspects of Cape's conduct in the final decision, although these other matters are not cited in support of the administrator's final decision.  For example, the roadway was wet from a previous rain.  Cape had been seen traveling at a high rate of speed, darting in and out of traffic.  Cape is said to have been awake for approximately 23 hours before the crash.  However, these extraneous matters do not appear to be relevant to the final decision because they are either supported by the evidence only slightly or do not appear to be factually contributory to the accident.  The roadway

---

[3]  There is no evidence in the administrative record that Cape was texting at the time of the accident.  Cape's girlfriend told Officer Oliverson that Cape "was texting back and forth to her and posting messages to his Facebook page during the journey from Glendive.  She stated that his last post to her on his Facebook page was at 1339 hours and his last text to her from his phone was at 1343 hours." AR 000045.  The accident occurred approximately 40 minutes later.  Not only is there no evidence that Cape was texting and posting messages to Facebook when the accident occurred, there is also no evidence that Cape was actually driving when he did text to his girlfriend and post messages to his Facebook page.

13

was wet, but not slick, and Cape did not attempt to brake according to witness testimony, so it appears that the wet road played little or no part in the accident. Although the Nissan Murano was seen traveling at a high rate of speed and passing cars when leaving a low-speed construction zone some ten miles east of the location of the accident, the witness did not actually see who was driving the vehicle (Cape or Kane).[4] Plaintiff points out that it is only surmise that serves as evidence that Cape had not slept for 23 hours, and that Cape could have slept during the hours when Kane was driving the vehicle.

In any event, based on Cape's alleged speeding, talking and texting, LINA concluded that Cape committed one of two offenses: either the offense of

---

[4] The Court distinguishes *Montana v. Tennell*, 170 P.3d 965 (Mont. 2005), which Defendant cites for the proposition that Tennell's driving ten miles before the collision was relevant because it is not "logically and temporally separate from the collision." *Id.* at 388. In *Tennell*, however, the court specifically noted that "witnesses observed Tennell drive erratically for the entire ten miles, not merely ten miles prior to the accident." *Id.* at 377. Here, we have one witness who viewed the vehicle speeding away from a construction zone and passing cars approximately ten miles before the accident, but the witness immediately lost sight of the vehicle and did not view the vehicle for the entire ten miles.

Negligent Homicide, MCA § 45-5-104, by negligently causing the death of his passenger, or the offense of Criminal Endangerment (felony), MCA § 45-5-207, "by disregarding a risk that a reasonable person (motorist) would observe while driving."  AR 000029.

Montana Code Annotated provides that "[a] person commits the offense of negligent homicide if the person negligently causes the death of another human being."  Mont. Code Ann. § 45-5-104(1).  The Montana Code defines the mental state "negligently" as follows:

> "Negligently" -- a person acts negligently with respect to a result or to a circumstance described by a statute defining an offense **when the person consciously disregards a risk** that the result will occur or that the circumstance exists **or when the person disregards a risk of which the person should be aware** that the result will occur or that the circumstance exists.  The risk must be of a nature and degree that **to disregard it involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation**.  "Gross deviation" means a deviation that is considerably greater than lack of ordinary care.

Section 45-2-101(43), M.C.A. (emphasis added).  To be convicted of Negligent Homicide, the State would have to prove beyond a reasonable doubt that Cape

either knew of the risk of death or should have known of the risk of death inherent in his actions. This risk must be such that disregarding it would be a gross deviation from the conduct of a reasonable person in that situation.

In *State v. Hoffman*, 639 P.2d 507 (Mont. 1982), a mother was found guilty of negligent homicide after the death of her three-year-old son. The defendant knew that her husband was violent toward her and her son. The defendant knew that her son had been hit by her husband outside of her presence. Defendant went to work. Her husband called her to say that her son was vomiting, and defendant told her husband to give him Pepto-Bismol. Her husband called again to say that the boy had fallen down some stairs on his tricycle and was seriously injured. Defendant came home on work break and found the boy pale, limp, blood on his nose and mouth, and with a swollen stomach. Defendant put the boy in his high chair and gave him a small amount of soda pop. Defendant then went back to work. A half hour later, when defendant's husband took the boy to the emergency room, the boy died. The boy had bruises covering his entire body, and the emergency room doctors testified that it would have been obvious to anyone that

he was seriously ill when the mother came home on her work break and saw the boy.  The Montana Supreme Court held that there was substantial evidence to support a verdict of negligent homicide because the defendant had failed to provide medical attention as she was required to do by Montana statute, § 40-6-211, M.C.A.  In failing to provide the necessary medical attention, the defendant "disregarded a risk of which she should have been aware, and the risk was so great that to disregard it was a gross deviation from a reasonable standard of conduct." *Id.* at 272.  The doctors testified that had the boy been brought to the hospital when he could still drink liquids, his life could have been saved.

In *State v. Dion*, 62 A.3d 792 (N.H. 2013), a defendant was convicted of negligent homicide following an accident in which her cell phone use distracted her to such an extent that she failed to exercise the degree of care that an ordinarily prudent person would exercise under similar circumstances.  In *Dion*, the defendant had an unobstructed view for 13.5 seconds of two elderly pedestrians in a long crosswalk spanning a bridge.  Defendant never slowed down from her speed of 30 miles per hour nor braked prior to hitting the two pedestrians.

The court noted that even though driving while using a cell phone may not always be risky or dangerous or *per se* blameworthy or create a substantial and unjustifiable risk, the court viewed the jury's guilty verdict to mean "only that [the defendant's] use of a cell phone *in this case* created a substantial and unjustifiable risk because it interfered with [defendant's] ability to maintain a proper lookout for [pedestrians]." *Dion*, 164 N.H. at 549. The court concluded that the defendant's "failure to avoid a pedestrian in a crosswalk, demonstrates a level of carelessness the seriousness of which should be 'apparent to anyone who shares the community's general sense of right and wrong.'" *Id.* (quoting *State v. Shepard*, 973 A.2d 318, 321 (N.H. 2009) (reversing negligent homicide conviction based on defendant's inexplicably crossing centerline for two seconds resulting in death of three motorcyclists)).

Thus, in order to convict Cape of this offense, the State of Montana would have to prove beyond a reasonable doubt that Cape knew or should have known that driving above the speed limit while talking on his cell phone and passing a vehicle on the interstate presented such a risk of death that no reasonable person

would conduct himself or herself in such a manner.  The Court is not persuaded by Defendant that the facts of this case are sufficient to meet such a standard beyond reasonable doubt, particularly when there is an alternate theory of proximate cause.  There is no law forbidding talking on a cell phone while driving on the Interstate, just as there is no Montana law requiring trucks to use their hazard lights to notify other motorists of rapid deceleration on an uphill.  In fact, it is probably fairly common for motorists to drive at interstate highway speeds and use their cell phones, there being no law to forbid such conduct. It also seems to the Court that on these facts there is a real question whether Defendant's alleged excessive speed and alleged cell phone use caused the accident, or whether, to the contrary, the truck driver's failure to use flashing hazard lights caused the accident.  This question of proximate cause would be an issue for a jury to decide beyond a reasonable doubt.  Driving above the speed limit and using a cell phone together are common, if negligent, driving behaviors, and without additional facts showing serious blameworthiness, such driving behaviors are fairly described as ordinary negligence, not criminal negligence.  The Court concludes that Defendant

has failed to show by a preponderance of the evidence that Cape committed the felony offense of Negligent Homicide.

Next is the question whether Cape committed the felony offense of Criminal Endangerment. Montana Code Annotated provides that "[a] person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment." § 45-5-207(1), M.C.A. The Montana Code defines the mental state "knowingly" as follows:

> "Knowingly" -- a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person's own conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense **when the person is aware that it is highly probable that the result will be caused by the person's conduct**. When knowledge of the existence of a particular fact is an element of an offense, knowledge is established if a person is aware of a high probability of its existence.

Section 45-2-101(35), M.C.A. (emphasis added).

In *Porter v. State*, 60 P.3d 951 (Mont. 2002), the defendant was convicted of multiple charges, including criminal endangerment. The defendant was drunk,

had gotten into a physical fight with his brother at a campground, and then climbed a nearby hill. A friend, Willoughby, went up the hill to try to reason with the defendant, but the defendant fired his rifle five times over Willoughby's head, and then hit Willoughby in the face and lower back with the rifle. The specific facts forming the basis of the charge of criminal endangerment came next. When the defendant returned to the campsite, he told one of the campers, who was there with his wife, that he (defendant) had "beaded down" his rifle on each and every person at the campsite from the top of the hill. This factual context (defendant's intoxication, anger, and fighting, and his firing of the prior shots) and then defendant's "beading down" on the individuals at the campsite from on top of the hill, if believed, by the jury, were deemed to be sufficient to convict of the charge of criminal endangerment. The defendant's act of "beading down" his rifle under those circumstances gave the defendant knowledge of a high probability that he was creating a substantial risk of death or serious bodily injury.

For Cape to be convicted of criminal endangerment, the State would have to prove beyond a reasonable doubt that Cape was aware that it would be highly

probable that speeding and talking on a cell phone while driving a motor vehicle on the interstate would cause a substantial risk of death or serious bodily injury to another. Once again, the Court notes that these acts may possibly describe negligent behavior, but whether the behavior rises to the level of such a gross deviation from standard conduct to support a finding of criminal endangerment is a different question. On these facts, the Court concludes that Defendant has failed to show by a preponderance of the evidence that Cape committed the felony offense of Criminal Endangerment.

The parties submitted this case on cross-motions for summary judgment and offered no additional evidence beyond the administrative record. However, and as a practical matter under *Kearney*, 175 F.3d at 1094-95, deciding the cross-motions results in a bench trial on the record. Therefore, the summary judgment motions should be construed as motions for judgment on partial findings, pursuant to Rule 52(c), Fed.R.Civ.P., and, indeed, the parties have requested findings.

Conclusion

The parties have stipulated to the *de novo* review of the administrative

record. The Court accepts the administrative record as sufficiently developed to

enable a full exercise of the Court's informed and independent judgment as is

required by *Mongeluzo*, 46 F.3d at 943. After close and careful examination of the

record, it does not appear that the scale tips in favor of LINA. The Court finds

that Defendant LINA based its decision to deny this claim for accidental death

benefit on its erroneous finding that Cape was texting and Facebooking at the time

of the accident, *see* AR 000008,[5] and the administrator summarized these

erroneous facts by concluding that "[s]peeding, talking and texting while driving

---

[5] The insurer's internal request for a legal opinion on the claim stated that
"[i]nsured was speeding and accessing Facebook on iPhone during minute before
rear-ending another vehicle on highway, which was wet." AR 000008. The
internal referral for decision stated that "Mr. Cape sent text messages and accessed
his Facebook account from his iPhone while he was driving prior to the crash."
AR 000010. However, the administrative record shows quite clearly that Cape's
texting and Facebook access occurred approximately 40 minutes before the
accident, and there is no evidence he was even driving when that activity occurred.
Therefore, the texting and Facebook activity is irrelevant to the causation of the
accident.

on a high-speed,[6] wet roadway is conduct that amounts to a gross deviation from standard conduct." AR 000029. In addition, there is an alternate theory of proximate cause that could explain why this accident occurred. Under these circumstances, the Court finds that Defendant has failed to demonstrate by a preponderance of the evidence that the felony exclusion applies to O'Neal's claim for the accidental death benefit. The Court concludes that Cape's death was accidental within the meaning of the policy, and benefits are due the beneficiary. Therefore, O'Neal's claim for accidental death benefits should be and hereby is granted.

Accordingly, the Court having determined under *Kearney*, 175 F.3d at 1094-95, that summary judgment is inappropriate under these circumstances,

IT IS HEREBY ORDERED that Defendant LINA's Motion for Summary Judgment (Doc. 17) and Plaintiff's Motion for Summary Judgment (Doc. 14) are construed as Motions for Judgment under Fed.R.Civ.P. 52(c), and Plaintiff's

---

[6] By "high-speed," the administrator apparently refers to an interstate highway.

Motion is GRANTED and Defendant's Motion is DENIED.  Defendant shall pay

the $83,000.00 accidental death benefit to the Plaintiff.  Let judgment enter in

Plaintiff's favor pursuant to Fed.R.Civ.P. 52(c).

Dated this 26th day of March, 2014.

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE